BARUCH S. GOTTESMAN (BG2222)
185-12 Union Turnpike
Fresh Meadows, NY 11366-1710
office: (718) 454-4422 x 103

*Attorney for Third-Party Defendant*
*Chaim Muskat*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|

**MARK KRAFT**, Trustee of The Marilyn Mandel    |    10-Civ-02018 (JG)(RML)
Irrev. Trust DTD 6/12/05    |

|

Plaintiff,    |    **ANSWER AND COUNTERCLAIM**
|    **OF THIRD PARTY DEFENDANT**
~ *against* ~    |    **CHAIM MUSKAT TO**
|    **DEFENDANT LINCOLN**
**LINCOLN BENEFIT LIFE COMPANY**,    |    **BENEFIT LIFE COMPANY'S**
|    **THIRD PARTY COMPLAINT**
Defendant /    |
Third-Party Plaintiff    |

|

~ *against* ~    |

|

**CHAIM MUSKAT**,    |

|

Third-Party Defendant/    |
Counterclaimant.    |

|

-------------------------------------------------------------x

Third-Party Defendant **CHAIM MUSKAT** (hereinafter referred to as "Muskat")

by and through his attorney, Baruch S. Gottesman, and pursuant to Rules 8(b) and 14(a)

comes with his Answer to the Third-Party Complaint (hereinafter sometimes referred to

as the "TPC") filed by Defendant/Third-Party Plaintiff **LINCOLN BENEFIT LIFE**

**COMPANY** (hereinafter sometimes referred to as "Lincoln") and does allege as follows:

**THE PARTIES**

1.      Muskat is without sufficient knowledge or information to admit or deny the allegations in Paragraph 1 of the TPC and, on that basis, denies the allegations in Paragraph 1 of the TPC.

2.      Muskat admits the allegations contained Paragraph 2 of the TPC.

**JURISDICTION AND VENUE**

3.      Muskat is without sufficient knowledge or information to admit or deny the allegations in Paragraph 3 of the TPC and, on that basis, denies the allegations in Paragraph 3 of the TPC.

4.      Muskat is without sufficient knowledge or information to admit or deny the allegations in Paragraph 4 of the TPC and, on that basis, denies the allegations in Paragraph 4 of the TPC.

5.      Muskat admits that he resides within this District and is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 5 of the TPC and, on that basis, denies the remaining allegations in Paragraph 5 of the TPC.

**FACTUAL ALLEGATIONS**

6.      Muskat admits the allegations in Paragraph 6 of the TPC.

7.      Muskat admits the allegations in Paragraph 7 of the TPC.

8.      Muskat is without sufficient knowledge or information to admit or deny the characterization of the alleged limits on Muskat's authority alleged in Paragraph 8 and subsections (a), (b), and (c), and on that basis denies the allegations in Paragraph 8 and subsections (a), (b), and (c); except that Muskat admits that the Agreement limits Muskat's authority on certain activities.

9.      Muskat is without sufficient knowledge or information to admit or deny the allegations in Paragraph 9 of the TPC and, on that basis, denies the allegations in Paragraph 9 of the TPC.

10.     Muskat denies the allegations of Paragraph 10 of the TPC; except that Muskat admits that in or about March 2006, Lincoln issued a life insurance policy (the "Policy") to Plaintiff, insuring the life of Marilyn Mandel ("Mandel") and Muskat admits that he was the agent involved in selling the Policy to Plaintiff.

11.     Muskat denies the allegations in Paragraph 11 of the TPC; except that Muskat admits that the Policy allowed for flexible premiums to be paid by Plaintiff and that the calculations of those premiums depended upon numerous factors.

12.     Muskat denies the allegations in Paragraph 12 of the TPC.

13.     Muskat denies the allegations in Paragraph 13 of the TPC.

14.     Muskat denies the allegations of Paragraph 14 of the TPC; except that Muskat admits that Lincoln attempted to "lapse" the policy in or around January 2008.

15.     Muskat is without sufficient knowledge or information to admit or deny the allegations in Paragraph 15 of the TPC and, on that basis, denies the allegations in Paragraph 15 of the TPC.

16.     Muskat is without sufficient knowledge or information to admit or deny the allegations in Paragraph 16 of the TPC and, on that basis, denies the allegations in Paragraph 16 of the TPC.

17.     Muskat is without sufficient knowledge or information to admit or deny the allegations in Paragraph 17 of the TPC and, on that basis, denies the allegations in Paragraph 17 of the TPC.

## COUNT I
(Breach of Contract Against Muskat)

18.     Muskat repeats and incorporates by reference as if fully set forth herein, Paragraphs 1 through 17 of this Answer.

19.     Paragraph 19 of the TPC contains a conclusion of law, which Muskat is without sufficient knowledge or information to admit or deny and on that basis Muskat denies the allegations in Paragraph 19 of the TPC.

20.     Muskat denies the allegations contained in Paragraph 20 of the TPC.

21.     Muskat denies the allegations contained in Paragraph 21 of the TPC.

22.     Muskat denies the allegations contained in Paragraph 22 of the TPC.

**COUNT II**
(Indemnification Against Muskat)


23.    Muskat repeats and incorporates by reference, as though fully set forth herein, Paragraph 1 through 22 of this Answer.

24.    Muskat denies the allegations contained in Paragraph 24 of the TPC.

25.    Muskat denies the allegations contained in Paragraph 25 of the TPC.


**COUNT III**
(Breach of Fiduciary Duty Against Muskat)


26.    Muskat repeats and incorporates by reference, as though fully set forth herein, Paragraph 1 through 25 of this Answer.

27.    Paragraph 27 of the TPC contains a conclusion of law, which Muskat is without sufficient knowledge or information to admit or deny and on that basis Muskat denies the allegations in Paragraph 27 of the TPC.

28.    Paragraph 28 of the TPC contains a conclusion of law, which Muskat is without sufficient knowledge or information to admit or deny and on that basis Muskat denies the allegations in Paragraph 28 of the TPC.

29.    Muskat denies the allegations contained in Paragraph 29 of the TPC.

30.    Muskat denies the allegations contained in Paragraph 30 of the TPC.

## COUNT IV
(Professional Negligence Against Muskat)

31.     Muskat repeats and incorporates by reference, as though fully set forth herein, Paragraph 1 through 30 of this Answer.

32.     Paragraph 32 of the TPC contains a conclusion of law, which Muskat is without sufficient knowledge or information to admit or deny and on that basis Muskat denies the allegations in Paragraph 32 of the TPC.

33.     Muskat denies the allegations contained in Paragraph 33 of the TPC.

34.     Muskat denies the allegations contained in Paragraph 34 of the TPC.

## MUSKAT'S AFFIMATIVE DEFENSES

### First Affirmative Defense
(Failure to State a Claim)

35.     Upon information and belief, the TPC fails to state a claim upon which relief can be granted.

### Second Affirmative Defense
(Fault of Lincoln)

36.     Upon information and belief, negligent, intentional, willful and/or wrongful acts of Lincoln contributed to the damages suffered by Plaintiff, if any, and therefore Lincoln is barred from obtaining indemnity from Muskat.

**Third Affirmative Defense**
(Acts by Third Parties)
(Lincoln Benefit Life's Improper Calculations)

37.     Upon information and belief any and all allegedly improper calculations of the premiums were provided by Lincoln itself.  Therefore, any damages suffered by Lincoln or Plaintiff were caused by Lincoln and not by Muskat.

**Fourth Affirmative Defense**
(Acts by Third Parties)
(Lincoln Benefit Life's Faulty Illustration Software)

38.     Upon information and belief any and all allegedly improper calculations were made as a result of Lincoln's faulty illustration software.  Therefore any damages suffered by Lincoln or Plaintiff were caused by Lincoln's faulty illustration software and not by Muskat.

**Fifth Affirmative Defense**
(Acts by Third Parties)
(Individuals at Lincoln Benefit Life's Failure to Correct Faulty Software)

39.     Upon information and belief any and all allegedly improper calculations were made as a result of the failure of individuals at Lincoln Benefit Life to correct its faulty illustration software.  Therefore any damages suffered by Lincoln or Plaintiff were caused by individuals at Lincoln Benefit Life who failed to correct the faulty software and not by Muskat.

**Sixth Affirmative Defense**
(No Cause in Fact by Muskat)

40.     Upon information and belief, Lincoln's claims are barred in whole or in part because no act or omission by Muskat was the cause of any injury in fact, damages or loss of money or property to Lincoln or any other party.

**Seventh Affirmative Defense**
(Conformance to Standard of Care by Muskat)

41     At all times relevant, Muskat conformed to and was acting pursuant to statutory, regulatory, industry and/or common law reasonable standards of due care and therefore precluded from any liability.

**Eighth Affirmative Defense**
(Mistake of Fact)

42.     At all times relevant, any and all alleged acts or omissions by Muskat were made in good faith and upon the belief that Muskat was acting consistent with his authority from Lincoln to distribute Lincoln life insurance products and supervise in-force Policies.  Muskat is thus precluded from liability.

**Ninth Affirmative Defense**
(Commercially Reasonable Acts)

43.     At all times relevant, any and all alleged acts or omissions by Muskat were commercially reasonable.  Muskat is thus precluded from liability.

**Tenth Affirmative Defense**
(Breach of Contract by Lincoln)

44.     Upon information and belief Lincoln breached its statutory, regulatory and contractual obligations to Plaintiff and Muskat.  These and other breaches negate or excuse any obligation that Muskat may have had to indemnify Lincoln.

**Eleventh Affirmative Defense**
(Ambiguity)

45.     Upon information and belief the Agreement, including its limitations on Muskat's authority on certain activities, are vague and ambiguous, thereby making the Agreement and its indemnification provisions unenforceable.

**Twelfth Affirmative Defense**
(Justification)

46.     At all relevant times, the acts and/or omissions of Muskat, if any, were legally justified and therefore Muskat cannot be liable for those acts or omissions.

**Thirteenth Affirmative Defense**
(Reasonableness and Good Faith)

47.     At all times relevant, Muskat acted reasonably and in Good Faith.

**Fourteenth Affirmative Defense**
(Substantial Compliance)

48.     Lincoln's claim is barred in whole or in part because Muskat has substantially complied with the requirements of the Agreement and the law as they apply to this action.

**Fifteenth Affirmative Defense**
(Failure to Mitigate Damages)

49.     Upon information and belief, Lincoln has failed to mitigate any of its alleged damages.

**Sixteenth Affirmative Defense**
(Unclean Hands)

50.     Upon information and belief, any recovery by Lincoln is precluded by the doctrine of unclean hands.

**Seventeenth Affirmative Defense**
(Consent)

51.     At all times relevant, Lincoln consented to Muskat's alleged acts or omissions.

**Eighteenth Affirmative Defense**
(Equitable Estoppel)

52.     Upon information and belief, Lincoln is equitably estopped from seeking indemnity from Muskat.

**Nineteenth Affirmative Defense**
(Waiver)

53.     Upon information and belief, Lincoln by their actions and/or omissions have waived any claims they may have against Muskat.

**Twentieth Affirmative Defense**
(Reservation of Additional Defenses)

54.     Lincoln has not set out their claims with sufficient particularity to permit Muskat to raise all appropriate affirmative defenses.  Muskat has not knowingly or intentionally waived any applicable affirmative defenses, and Muskat reserves the right to assert and to rely on such additional affirmative defenses not stated here, including, but not limited to such other defenses as may become available or apparent during discovery of this action, and reserves the right to amend this Answer to assert any such defenses.

**PRAYER FOR RELIEF**

WHEREFORE Muskat prays with respect to its Answer to the Third Party Complaint that an Order and Judgment be entered in its favor and against Defendant/Third-Party Plaintiff as follows:

A.     That Lincoln take nothing by the Third Party Complaint;

B.     Dismissing the Third Party Complaint by Lincoln against Muskat in its entirety and with prejudice;

C.     Denying each and every demand, claim and prayer for relief contained in the Third Party Complaint;

D.     Awarding Muskat its costs and disbursements, including reasonable attorney fees, incurred in this action; and

C.     That Muskat be awarded such other and further relief as this Court may deem appropriate.

BARUCH S. GOTTESMAN (BG2222)
185-12 Union Turnpike
Fresh Meadows, NY 11366-1710
office: (718) 454-4422 x 103

*Attorney for Third-Party Defendant*
*Chaim N. Muskat*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            |
**MARK KRAFT**, Trustee of The Marilyn Mandel   |        10-Civ-02018 (JG)(RML)
Irrev. Trust DTD 6/12/05                         |
                                                 |
                Plaintiff,                       |        **COUNTERCLAIM**
                                                 |
        ~ *against* ~                            |
                                                 |
**LINCOLN BENEFIT LIFE COMPANY**,                |
                                                 |
                Defendant /                       |
                Third-Party Plaintiff,            |
                                                 |
        ~ *against* ~                             |
                                                 |
**CHAIM MUSKAT**,                                |
                                                 |
                Third-Party Defendant/            |
                Counterclaimant.                  |
                                                 |
------------------------------------------------------------x

        Third-Party Defendant / Counterclaimant **CHAIM MUSKAT** (hereinafter

referred to as "Muskat") by and through his attorney, Baruch Gottesman, and pursuant to

Rules 13 and 14(a)(3) and comes with his Counterclaims against the Defendant/

Third-Party Plaintiff **LINCOLN BENEFIT LIFE COMPANY** (hereinafter referred to

as "Lincoln") and does allege as follows:

## THE PARTIES

1.      At all times relevant to this Counterclaim, Chaim Muskat (hereinafter referred to as "Muskat" or "Counterclaimant") was a New York-based life insurance agent with a business address of 185-12 Union Turnpike, Fresh Meadows in the County of Queens in the State of New York.

2.      Upon information and belief, at all times relevant to this Counterclaim, Lincoln Benefit Life Company (hereinafter sometimes referred to as "Lincoln" or "Counterclaimee") was an insurance company organized and existing under the laws of the State of Nebraska with its principal place of business in Nebraska.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under Rule 13 of the Rules and pursuant to 28 U.S.C. § 1332 because this Counterclaims arises out of, *inter alia*, transactions and/or occurrences which are the subject of the subject matter of the Third Party Complaint and because this action is between citizens of diverse states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

4.      Venue is proper in this judicial district pursuant to Rules 13 and pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the Third-Party Complaint occurred in this District.

## **FACTUAL ALLEGATIONS**

5.      At all times relevant to this Counterclaim, Muskat was a well-respected life insurance broker with extensive experience addressing estate and charitable planning issues for the high-net worth market.

6.      In 2005 Muskat contracted with Lincoln as an agent.

7.      In 2005 Muskat approached Ms. Marilyn Mandel to discuss how life insurance may be able to address her financial and estate planning including a charitable gifting plan in furtherance of her posthumous philanthropic endeavors.

8.      Through Muskat's efforts, on or about January 25, 2006, Lincoln issued a life insurance policy in the face amount of $5,000,000.00 on Ms. Marilyn Mandel (hereinafter "the policy") to The Marilyn Mandel Insurance Trust (hereinafter "policy owner" or "client"), with Muskat serving as broker.

9.      After policy issuance, Muskat continued to service the policy by communicating to his client about the proper premium payments, facilitating policy changes, obtaining in-force illustrations, and otherwise remaining available to assist his client.

10.      Beginning in January 2006 and continuing until the alleged lapse of the policy in January 2008, Muskat received information about the policy from Lincoln through written notices, telephone conversations with Lincoln representatives, and Lincoln's software and online illustration system.  Muskat diligently relayed this policy information to his client.

11.      The policy information sent by Lincoln to Muskat was contradictory and contained mistaken and/or misleading information.

12.     Beginning in February 2007 and continuing through January 2008, Lincoln issued the policy owner a series of erroneous lapse warning notices, incorrect demands for payment and other mistaken and/or misleading information.

13.     The information sent by Lincoln to the policy owner was contradictory, contained mistaken and/or misleading information and conflicted with the policy information that Lincoln sent Muskat.

14.     The contradictory and mistaken and/or misleading information that Lincoln supplied to Muskat and his client caused Muskat extreme professional and personal humiliation, badly damaged Muskat's professional and personal relationships with his client, and otherwise damaged Muskat's reputation in the insurance industry. Muskat also lost future business with the extended Mandel family.

15.     Upon information and belief individuals at Lincoln, including but not limited to its president Larry Dahl, its vice president Kevin Orth, its product actuary John Thuss had actual knowledge that Lincoln's automated accounting/ billing/ notification systems were dysfunctional and that these systems would send Muskat and his client information that was contradictory and mistaken and/or misleading.


**<u>First Count</u>**
(Breach of Implied Covenant of Good Faith and Fair Dealing)

16.     Muskat repeats and incorporates by reference, as though fully set forth herein, Paragraph 1 through 15 of this Counterclaim.

17.     Muskat and Lincoln had a valid Agreement, which included an implied covenant of good faith and fair dealing which, in the context of an insurance agent

contract, includes the obligation by the insurance company to provide their agents and their agents' clients accurate, complete and correct information.

18.     Muskat has performed his obligations under the Agreement.

19.     Lincoln, by providing contradictory and mistaken and/or misleading information to Muskat and his client failed to perform their obligations under the agreement.

20.     As a direct and proximate consequence of Lincoln's failure to perform its obligations under the agreement, Muskat suffered extreme professional and personal humiliation, badly damaged professional and personal relationships with his client, and otherwise damaged Muskat's reputation in the insurance industry.   Such damage included, but was not limited to, loss of future business with the extended Mandel family

## Second Count
(Negligence)

21.     Muskat repeats and incorporates by reference, as though fully set forth herein, Paragraph 1 through 20 of this Counterclaim.

22.     Lincoln – in its position of trust and authority over the policy information about the Mandel Policy – had statutory, regulatory, and industry standard duties to provide complete, accurate and correct information to Muskat and his client.

23.     This duty was owed to Muskat who, as a life insurance broker, relied on Lincoln to provide himself and his clients complete, accurate and correct information about his clients' life insurance policies.

24.     Upon information and belief, Lincoln breached its duty to Muskat by failing to provide him and his clients complete, accurate and correct information about their policies and premiums due on these policies.

25.     Lincoln's duties included, but were not limited to, the provisions under N.J.A.C. § 11:4-52.4(b) which provides that:

> "an insurer . . . shall not . . . (5.) Use an illustration that at any policy duration depicts policy performance more favorable to the policy owner than that produced by the illustrated scale of the insurer whose policy is being illustrated; . . . (7.) provide an applicant with an incomplete illustration; (8.) represent in any way that premium payments will not be required for each of the policy in order to maintain the illustrated death benefits, unless that is the fact . . .". N.J.A.C. § 11:4-52.4(b)

26.     Upon information and belief, Lincoln provided Muskat and his client illustrations that depicted policy performance more favorably to the policy owner than that produced by Lincoln's illustrated scale; in violation of Lincoln's regulatory duties.

27.     Upon information and belief, Lincoln provided Muskat and his client illustrations that did not provide complete information about what payments were required; in violation of Lincoln's regulatory duties.

28.     Upon information and belief, Lincoln provided illustrations, which represented that premium payments would not be required in the third year, when in fact premium payments were required; in violation of Lincoln's regulatory duties.

29.     Lincoln's statutory duties included the provisions under N.J.S.A. § 17:29 B-4(1) which prohibits life insurance companies that operate in New Jersey from:

> "[m]aking, issuing, circulating, or causing to be made, issued or circulated, any . . . illustration or statement

> misrepresenting the terms of any policy issued or to be
> issued . . . or making any misrepresentation to any
> policyholder insured in any company for the purpose of
> inducing or tending to induce such policyholder to lapse,
> forfeit or surrender his insurance." N.J.S.A. § 17:29 B-4(1)

30.     Upon information and belief, Lincoln made, issued, circulated, and/or

caused to be made, issued, or circulated illustrations and statements that misrepresented

the terms of the policy and which tended to induce the policy owner to allegedly lapse the

policy; in violation of Lincoln's statutory duties.

31.     Lincoln is required by New Jersey regulations to appoint an illustration

actuary.  According to the provisions of N.J.A.C. § 11:4-52.9(b) the illustration actuary is

required to:

> "certify that the disciplined current scale used in
> illustrations is in conformity with the Actuarial Standard of
> Practice for Compliance with the NAIC Model Regulation
> on Life Insurance Illustrations promulgated by the
> Actuarial Standards Board, and that the illustrated scales
> used in insurer-authorized illustrations meet the
> requirements of these rules".  N.J.A.C. § 11:4-52.9(b)

32.     Upon information and belief, Lincoln provided illustrations that were not

in conformity with industry standards, as expressed through the Actuarial Standard of

Practice for Compliance with the National Association of Insurance Commissioners

model regulation; in violation of the Lincoln's industry standard duties.

33.     As a direct and proximate consequence of Lincoln's breaches, Muskat

suffered extreme professional and personal humiliation, badly damaged professional and

personal relationships with his client, and otherwise damaged his reputation in the

insurance industry.  Such damage included, but was not limited to, loss of future business

with the extended Mandel family

**Third Count**
(Reliance on Another's Conduct – Estoppel)

34.      Muskat repeats and incorporates by reference, as though fully set forth herein, Paragraph 1 through 33 of this Counterclaim.

35.      Muskat made representations to his client about the status of the policy, premiums owed, and other policy information in reliance on Lincoln's words and conduct.

36.      Muskat made these representations to his client based on justified reliance on the accuracy of the policy information he received from Lincoln.

37.      Lincoln communicated this information to Muskat through written documentation, telephone conversations with Lincoln representatives, and Lincoln's online and software illustration programs.

38.      Upon information and belief, the information Lincoln communicated to Muskat was not accurate, correct and complete.

39.      As a direct and proximate consequence of Muskat's relaying policy information from Lincoln to his client, Muskat suffered extreme professional and personal humiliation, badly damaged professional and personal relationships with his client, and otherwise damaged his reputation in the insurance industry.  Such damage included, but was not limited to, loss of future business with the extended Mandel family

## Fourth Count
(Words Negligently Spoken)

40.     Muskat repeats and incorporates by reference, as though fully set forth herein, Paragraph 1 through 39 of this Counterclaim.

41.     Lincoln imparted words to Muskat through its lapse warning notices, demands for payment, illustrations and other policy information.

42.     Upon information and belief these words were made without reasonable care and were careless and/or negligent.

43.     It was reasonably expected that Muskat, as an insurance agent, would rely on such statements by Lincoln for policy information.

44.     Muskat did in fact justifiably rely on these statements.

45.     Lincoln expressed these statements directly to Muskat and his client and upon information and belief did so with the knowledge that they would be acted upon.

46.     Lincoln as the insurance company that produced the policy information and with sole access to financial information about the policy (including premiums required) had a special relationship with their agent Muskat and a duty of care with respect to the policy information it relayed to Muskat and his clients.

47.     Muskat relied on these statements by Lincoln to his detriment, and as a direct and proximate consequence of Muskat's reliance on Lincoln's statements, Muskat suffered extreme professional and personal humiliation, badly damaged professional and personal relationships with his client, and otherwise damaged his reputation in the insurance industry.  Such damage included, but was not limited to, loss of future business with the extended Mandel family.

**PRAYER FOR RELIEF**

**WHEREFORE** Counterclaimant Muskat prays with respect to its Counterclaim that an Order and Judgment be entered in its favor and against Defendant/Third-Party Plaintiff as follows:

A. A Judgment and Order in favor of Counterclaimant and against Third-Party Plaintiff awarding damages for Third-Party Plaintiff's wrongful acts.

B. Awarding Muskat its costs and disbursements, including reasonable attorney fees, incurred in this action; and

C. That Muskat be awarded such other and further relief as this Court may deem appropriate.

DATED THIS FOURTH DAY OF FEBRUARY, 2011
AT: QUEENS, NEW YORK

By:  _Baruch S. Gottesman_

    BARUCH S. GOTTESMAN, ESQ.
    185-12 Union Turnpike
    Fresh Meadows, NY 11366-1710

    *Attorney for Third-Party Defendant/*
    *Counterclaimant Chaim Muskat*

I HEREBY CERTIFY that on this date, Muskat electronically filed the foregoing **ANSWER AND COUNTERCLAIM OF THIRD-PARTY DEFENDANT CHAIM MUSKAT TO DEFENDANT LINCOLN BENEFIT LIFE COMPANY'S THIRD-PARTY COMPLAINT** with the Clerk for this District Court using the CM/ECF system, which sent notification of such filing to the following:

Cheryl D. Lipsius, Esq.
SCHINDEL FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP
14 Penn Plaza, Suite 500
New York, New York 10122
(212) 563-1710

*Attorneys for Plaintiff*
*Mark Kraft, Trustee of the*
*Marilyn Mandel Irrev. Trust DTD 6/12/05*

Andrew T. Hahn, Sr.
Jay W. Cho
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

*Attorneys for Defendant*
*Lincoln Benefit Life Company*

DATED THIS FOURTH DAY OF FEBRUARY, 2011
AT: QUEENS, NEW YORK

By: _____/s/_____
              BARUCH S. GOTTESMAN